**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

BILLY SMITH JR.,

               Plaintiff,       No. 24-cv-11794-DLC

               v.

KENNETH EGAN & THE STOP &
SHOP SUPERMARKET COMPANY,
LLC.

               Defendants.

**ORDER ON DEFENDANT OFFICER KENNETH EGAN'S MOTION TO DISMISS**

CABELL, U.S.M.J.

    Plaintiff Billy Smith Jr. (Smith) has brought an action against Brockton Police Officer Kenneth Egan and the Stop & Shop Supermarket Company, LLC (Stop & Shop). He contends that the defendants falsely accused him of food tampering and caused baseless criminal charges to be brought against him. Officer Egan moves to dismiss the complaint against him. (D. 12). The motion is denied for the reasons explained below.

**FACTUAL ALLEGATIONS**

    The facts are taken from the complaint and treated as true for purposes of the motion to dismiss. (D. 1 ¶¶ 11-94).

    On May 26, 2020, Smith was grocery shopping at a Stop & Shop supermarket in Brockton, Massachusetts. Officer Egan was working

as a uniformed detail police officer assigned to the store.  As well, a video surveillance system permitted a Stop & Shop employee named Calvin Fenelus to monitor, investigate, and surveil store customers.  At some point, Fenelus began to surveil Smith because he is black.

Security camera footage from May 26 showed Smith selecting a carton of almond milk from a non-refrigerated shelf, placing it in his shopping cart, and heading towards an aisle containing greeting cards.  Smith also had Bai juice drinks in his cart, which likewise came from a non-refrigerated shelf.  While in the greeting cards aisle, where he spent about 75 seconds looking down at the cards and at coupons he had brought from home, the camera showed only Smith's head, left shoulder, and back.  Smith then returned the almond milk and the juice drinks to the same non-refrigerated shelves where he had found them.

Smith subsequently paid for his groceries and left the store.  As he was leaving, Fenelus approached Officer Egan and asked Officer Egan to record the plaintiff's license plate number.  When Officer Egan asked why, Fenelus said, "I'm not sure yet" and stated that the plaintiff had been "exhibiting suspicious behavior."  Officer Egan recorded the plaintiff's license plate and told Fenelus to review the security camera footage to see what the plaintiff had done.

2

Fenelus returned to Officer Egan wearing gloves and holding a carton of almond milk. He told Officer Egan, "[h]ey, I think he peed in some milk," and that the carton was "still warm to the touch." Fenelus falsely told Officer Egan that the milk carton had been on a refrigerated shelf. Officer Egan himself did not touch the carton

Officer Egan and Fenelus then exited the store, opened the carton, and poured out some of its contents. Officer Egan and Fenelus both observed what looked to Officer Egan like almond milk. They did not note a scent consistent with urine and neither "noted that the almond milk container had previously been opened."[1] Officer Egan subsequently called the Plymouth County Bureau of Criminal Investigation (BCI) to photograph and process the evidence.

Following these events, Officer Egan drafted a police report to be used to apply for a criminal complaint and warrant for Smith's arrest. It stated among other things that Officer Egan "observed [Smith] holding items near his groin area in a hidden manner and looking around as if to make sure no one was around. He then appears to place the items carefully back on the shelves

---

[1] It is not clear whether this assertion is meant to convey that the carton had not previously been opened before Officer Egan and Fenelus opened it, or merely that no one noticed one way or the other. The court for present purposes infers it was the latter and infers further that Fenelus is the one who poured out the carton's contents.

towards the back, behind other items." The report referred the reader to the video recording as evidence but Officer Egan, "upon information and belief," did not view the video himself and instead relied on Fenelus' representations as to what the video depicted.

On May 27, 2020, the Brockton District Court granted Officer Egan's application for a three-count complaint charging Smith with attempted poisoning, disorderly conduct, and vandalism. Police subsequently arrested Smith at his home.

On June 1, 2020, Officer Egan obtained a second criminal complaint charging Smith with assault and distributing food containing a foreign injury-causing substance. In addition to his original report, Officer Egan submitted a "supplemental narrative" stating that, "upon further review of the video, it appears the almond milk was taken from the non-refrigerated section of the store shelves, contrary to the initial observation." "Upon information and belief," this was the first time that Officer Egan actually reviewed the video.

The narrative elaborated that Officer Egan called Fenelus for an explanation upon realizing the milk had not been taken from a refrigerated shelf after all, and Fenelus "reiterated that the container of almond milk was 'much more than room temperature.'" The narrative further explained that, notwithstanding the "poor to mid quality" of the video, the plaintiff could be observed

4

"obscuring his activity from view of the public and camera, but holding items near his mid-section while looking around," although the video in fact did not depict the plaintiff holding any items, let alone any items near his "mid-section." Officer Egan also reported that he followed the plaintiff into the parking lot and the plaintiff in turn looked back at Officer Egan several times "in a manner that led [Officer Egan] to believe he was nervous about something."

On September 8, 2021, all criminal charges against Smith were dismissed for lack of prosecution.

### LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide "enough facts to state a claim [for] relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The facts, accepted as true, must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the allegations must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and must show more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

## ANALYSIS

The complaint asserts three malicious prosecution-related claims against Officer Egan:  Count One asserts a claim for malicious prosecution in violation of 42 U.S.C. § 1983 (section 1983); Count Two alleges that Officer Egan and Stop & Shop conspired to effectuate Smith's malicious prosecution, in violation of section 1983; and Count Three asserts a common law claim against Officer Egan for malicious prosecution.[2]

1. Count One – Section 1983 Malicious Prosecution Claim

To state a claim for malicious prosecution under section 1983, a plaintiff must establish that the defendant "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in the plaintiff's favor." *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101 (1st Cir. 2013).

In moving to dismiss, Officer Egan argues that Smith cannot prove the second element, that his arrest was not supported by probable cause.  Officer Egan argues, correctly, that all of Smith's claims, including his section 1983 claim, necessarily fail as a matter of law if Smith's arrest was supported by probable cause. *See Roche v. John Hancock Mutual Life Ins. Co.*, 81 F.3d

---

[2] In addition to these claims, Count Four asserts a common law malicious prosecution claim against Stop & Shop.

249, 254 (1st Cir. 1996) ("if probable cause to arrest and
prosecute the [plaintiff] existed, no unconstitutional deprivation
existed."); *Mitchell v. Kelley*, 910 F.Supp.2d 343, 345 (D. Mass.
2012) (A section 1983 claim for false arrest is not viable where
the arrest is supported by probable cause).  Officer Egan also
notes, correctly, that a neutral judicial official's determination
that probable cause exists for the individual's arrest is an
intervening act that *could* disrupt any argument that the defendant
officer had caused the continued unlawful seizure.  *See Hernandez-
Cuevas v. Taylor*, 723 F. 3d at 100.  Officer Egan argues that both
propositions favor him here:  he contends that the pled facts
reflect that he conducted a proper investigation supporting
probable cause to arrest and, regardless, the state district
court's subsequent determination to issue a criminal complaint
constituted an intervening event breaking the chain of causation
between Officer Egan's actions and Smith's arrest.

It remains to be seen whether a full airing of the facts
supports or refutes Officer Egan's proffered narrative,
particularly his claim that he had probable cause to seek criminal
charges against Smith based on his investigation.  At this
juncture, though, the complaint asserts several allegations which
if true could tend to suggest contrarily that Officer Egan had a
basis to suspect that some of Fenelus' key allegations may not

have been entirely true.  Among other things, the complaint alleges that:  Fenelus initially focused on the plaintiff because of his race; Officer Egan, contrary to what his report indicated, did not initially personally view the video of the event during the initial encounter; Officer Egan and Fenelus poured some of the carton's contents on the ground and did not see or smell anything to suggest the milk had been tampered with; Officer Egan came to realize before seeking the second criminal complaint that the almond milk carton in question had not been on a refrigerated shelf as Fenelus had claimed; and Officer Egan falsely stated in seeking the second complaint that Fenelus "reiterated" that the milk carton was much more than room temperature even though this was the first time Fenelus had made such a claim.

The court notes that many of the complaint's key allegations are not made upon the plaintiff's personal knowledge but rather "upon information and belief."  This observation may signal challenges the plaintiff understands he may face in seeking to prove his claims, but they do not warrant great concern for now. A court evaluating a motion to dismiss may consider allegations made "upon information and belief" which the plaintiff has a reasonable basis to believe may be true but for which they may need discovery to "gather and confirm its evidentiary basis."  *See Doe v. Trustees of Dartmouth College*, 615 F. Supp.3d 47, 59 (D.N.H.

2022); *see also Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 n.5 (1st Cir. 2012) ("'Upon information and belief' signifies that 'allegations are "based on secondhand information that the asserting party believes to be true."'"). Here, because these allegations if proven could help to support a claim that Officer Egan had a basis to doubt whether the plaintiff had actually urinated in the milk before he sought a criminal complaint, the court will credit them now and let discovery reveal their accuracy.

To be sure, Officer Egan contends that the state court's decision to issue the criminal complaint constituted an intervening act that severed any causal link between Officer Egan's actions and the issuance of charges. *See Hernandez-Cuevas*, 723 F.3d at 100. As the court in *Hernandez-Cuevas* went on to note, however, a plaintiff may overcome the causation problem if they can show the police officer influenced the decision to prosecute by, for example, lying to or misleading the prosecutors, failing to disclose exculpatory evidence, or unduly pressuring the prosecutor to seek the charges. *Id.* Given the undeveloped record, the court cannot agree at this juncture that the state court's decision to issue the criminal complaints was so independent as to absolve Officer Egan of any responsibility for the subsequent prosecution.

Accordingly, the court finds that the complaint pleads a viable section 1983 claim for malicious prosecution. Dismissal of the claim therefore is not warranted.

2. Count Two – Conspiracy to Violate Section 1983

Count Two alleges that Officer Egan and Stop & Shop "conspired to cause a seizure of Plaintiff pursuant to legal process unsupported by probable cause and criminal proceedings terminated in Plaintiff's favor." Given its phraseology and allusion to criminal proceedings, the court reads Count Two to allege that the defendants conspired to effectuate the plaintiff's malicious prosecution.

Officer Egan argues that this claim is time barred because the statute of limitations for a conspiracy charge is three years, and the clock began to run from the time the plaintiff knew or should have known of the injury that is the basis for his claim. *See Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001). Officer Egan argues that Smith should have been on notice of a deprivation of his civil rights when he was arrested, in May 2020, and his conspiracy claim is thus untimely where he did not initiate this action until more than three years after his arrest in July 2024. As noted above, though, Count Two alleges a conspiracy to effectuate a malicious prosecution, not a baseless arrest. This matters here because a claim for malicious prosecution does not

accrue until criminal proceedings have terminated in the plaintiff's favor. *McDonough v. Smith*, 588 U.S. 109, 116 (2019); *Heck v. Humphrey*, 512 U.S. 477 (1994). Because the complaint alleges that the state criminal proceedings did not resolve until September 2021, Smith had until three years from that point, until September 2024, to bring a claim. As Smith filed this action in July 2024, before the three-year deadline, it follows that Count Two was not untimely filed and is not subject to dismissal on that ground.[3]

### 3. Count Three – Common Law Malicious Prosecution

Count Three alleges common law malicious prosecution. "The elements of a common law cause of action for malicious prosecution are: (1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." *Nieves*, 241 F.3d at 53. In this regard, the principal difference between a common law and section 1983 malicious prosecution claim is that the plaintiff in a common law malicious prosecution claim must additionally show that the

---

[3] Count Two may yet face other challenges. Even accepting the pled allegations as true, it is debatable whether they reasonably sketch the existence of a conspiratorial agreement between Officer Egan and Stop & Shop. Again, discovery will shed light on the relative merits of the plaintiff's claims.

defendant acted with actual malice. *See Hernandez-Cuevas*, 723 F.3d at 99.

In moving to dismiss, Officer Egan argues that the complaint fails to establish both a lack of probable cause and that Officer Egan acted with malice. Neither claim resonates. Regarding a lack of probable cause, the court has already found as discussed above that the complaint adequately pleads facts suggesting that Officer Egan had a basis to suspect that Smith did not tamper with the milk as accused.

Regarding malice, Officer Egan argues based on the Massachusetts model jury instructions for willful and malicious destruction of property that a plaintiff, to show malice, must show that the defendant acted out of "cruelty, hostility or revenge." That is not the applicable definition in this context, however. Rather, for purposes of a common law malicious prosecution claim, malice is defined as "any wrong or unjustifiable motive" and may be inferred from the facts, including that the defendant effectuated a criminal prosecution despite knowing there was no probable cause to do so. *See e.g., Campbell v. Casey*, 166 F.Supp.3d 144, 153 (D. Mass. 2016) (malice is defined as "any wrong or unjustifiable motive" and may be inferred from a lack of probable cause). Here, while the allegations suggesting Officer Egan acted with malice are not explicit or overly fulsome, malice

can arguably be inferred from the facts suggesting that Officer
Egan had a basis to believe Smith did not tamper with the milk and
yet chose nonetheless to bring charges against him.  That is enough
for now.

Accordingly, the court finds that Count Three pleads a valid
common law malicious prosecution claim.

4. The Court Declines to Consider the Issue of
   Qualified Immunity at This Stage.

Officer Egan argues that he is independently entitled to
qualified immunity on all claims against him.  The qualified
immunity doctrine shields public officials from liability for
civil rights violations as long as "their conduct does not violate
clearly established statutory or constitutional rights of which a
reasonable person would have known."  *Harlow v. Fitzgerald*, 457
U.S. 800, 818 (1982); *see also Anderson v. Creighton*, 483 U.S.
635, 638 (1987).  The salient question is "whether, under the
circumstances that confronted the official, 'a reasonable official
would understand that what he is doing violated that right.'"
*Berthiaume v. Caron*, 142 F.3d 12, 15 (1st Cir. 1998) (quoting
*Creighton*, 483 U.S. at 640).  Officer Egan argues among other
things that he did not violate the plaintiff's rights but that if
he did, a reasonable officer in his position would not have

understood that what he was doing violated the plaintiff's Fourth Amendment rights.

Even assuming Officer Egan may ultimately be able to advance a non-frivolous claim of qualified immunity, the court declines to consider the claim now on an undeveloped record.  At the motion to dismiss stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309, (1996) (emphasis original).  As such, "[i]t is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity defenses at the summary judgment stage." *Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010). Dismissal is therefore not warranted on this ground at this stage.

### CONCLUSION

For the foregoing reasons, "Defendant, Kenneth Egan's Motion to Dismiss" (D. 12) is DENIED.


                                        /s/ Donald L. Cabell
                                        DONALD L. CABELL, U.S.M.J.

DATED:  September 29, 2025


14